# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 12CR4776 WQH |
| Plaintiff, | ORDER |
| vs. | |
| BENITO ALVARADO, | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are 1) Defendant's motion to dismiss the indictment (ECF No. 29-2) and 2) Defendant's motion to dismiss the indictment and request for discovery (ECF No. 38).

## BACKGROUND FACTS

On September 2, 2012, at approximately 10:05 a.m., Defendant entered the United States through the San Ysidro, California Port of Entry in a grey Jeep Grand Cherokee bearing California license plates. Defendant was the driver and his 14 year old son was a front-seat passenger. Defendant presented a valid I-551 card and his California birth certificate to United States Customs and Border Protection Officer Melendez and a school ID for his son. Defendant stated twice that he was not bringing anything into the United States.

Border Protection Officer Melendez noticed that the back seat of the vehicle was bulky and pouchy. Officer Melendez asked the Defendant for the keys and asked the

1 Defendant to unlock the doors. Officer Melendez entered the back seat of the vehicle
2 and pressed down on the rear seat which felt hard, like a hard object. Officer Melendez
3 noticed a gap between the seat cushion that was not common from factory stitching.
4 Officer Melendez inserted his finger into the gap and felt a hard object under the
5 padding. Officer Melendez called for assistance and placed the Defendant in handcuffs.
6 A narcotics dog alerted to the rear door/rear seats of the vehicle. Defendant was
7 escorted to the security office and the vehicle was driven to the secondary lot for further
8 inspection.

9 At the secondary inspection area, Officer Rodriguez took custody of the vehicle.
10 Officer Rodriguez initially took photographs of the vehicle, probed the back seat, and
11 discovered packages in the backrest of the back seat. Officer Rodriguez used a knife
12 to slit open the backrests of the back seat from the top to the bottom in order to reveal
13 and to remove five packages from the left backrest of the back seat and nine packages
14 from the right backrest of the back seat. Field tests of the packages were positive for
15 methamphetamine. Officer Rodriguez photographed the backrest of the back seat prior
16 to the search for the drugs as well as the backrest of the back seat after it had been slit
17 open. After the search was completed and the packages were removed, the vehicle was
18 seized and taken into custody by the Department of Homeland Security. (ECF No. 42-1
19 at 2).

20 On September 2, 2013, at approximately 1:37 p.m., San Diego Police Officer
21 Gallegos advised the Defendant of his *Miranda* rights in the Spanish language
22 witnessed by Homeland Security Investigations Special Agent Aradanas. Defendant
23 stated that he understood his rights, signed the waiver form and agreed to provide a
24 statement without an attorney present. Defendant made a statement which was
25 videotaped. The Government represents that the "Defendant stated, among other things,
26 that he knew methamphetamine was concealed in the seat of this vehicle when he
27 attempted to cross through the Port of Entry." (ECF No. 42 at 5). Defendant does not
28

1 contest this representation.[1]

2 On September 4, 2012, a complaint was filed charging Defendant with importation of methamphetamine. Defendant made his first appearance and counsel was appointed. *United States v. Benito Alvarado*, 12CR4039-WQH.

On October 1, 2012, Defendant and his counsel signed a Plea Agreement in which Defendant agreed to waive indictment and to plead guilty to an Information charging him with importation of methamphetamine in violation of 21 U.S.C. § 952 and 960.

On October 2, 2012, an Information was filed charging the Defendant with importation of methamphetamine. Defendant entered a plea of not guilty and a change of plea hearing was scheduled for October 16, 2012 before the Magistrate Judge.

On October 4, 2012 the Plea Agreement was signed by Government Counsel.

On October 16, 2012, a hearing was held before the Magistrate Judge. Defendant requested more time to speak with counsel.

On October 23, 2012, a hearing was held before the Magistrate Judge at which Defendant requested new counsel. New counsel was appointed.

On November 8, 2013, the Department of Homeland Security prepared a disposition order indicating that the vehicle would be sold for scrap. (ECF No. 42-1 at 4).

On November 9, 2012, a second change of plea hearing was scheduled before the Magistrate Judge.

On November 9, 2012, Defendant filed a motion to compel discovery and preserve evidence, including "any vehicle involved in the case" in 12CR4039 WQH . (ECF No. 18).

On November 15, 2012, Defendant appeared before the Magistrate Judge for the change of plea. The hearing was continued to November 27, 2012 in order to allow time for the Defendant to review documents in Spanish.

---

[1]The video is not in the record.

On November 19, 2012, the vehicle was subject to a final canine screening. (ECF No. 42-1 at 6).

On November 20, 2012, the grand jury returned an indictment charging the Defendant with importation of methamphetamine in violation of 21 U.S.C. §§ 952 and 960 and a second case was filed. (ECF No. 1). *United States v. Benito Alvarado*, 12CR4776-WQH.

On November 27, 2012, the Magistrate Judge entered an order vacating the change of plea hearing upon notice that Defendant was not ready to plead guilty. (ECF No. 23).[2]

On November 27, 2012, Defendant filed a motion in 12CR4776 WQH to compel discovery and to preserve evidence, including " any vehicle involved in the case." (ECF No. 4-1 at 3).

On December 3, 2012, this Court held a motion hearing. The Court inquired of Defense Counsel whether there were any discovery issues that needed to be addressed. Counsel for the Defendant stated "the short answer is yes, but it is our hope that the Court will grant us another motion hearing date sometime toward the end of January."

On December 5, 2013, the vehicle was sold to a private party. (ECF No. 42-1 at 4). The case agent for the Government testified that all evidence is held by the Customs and Border Protection and that there was a 60 day hold from the time of arrest on the disposition of a vehicle at the time of the Defendant's arrest. The case agent testified that the case agent would make an effort to preserve the vehicle only when the Assistant United States Attorney asks the case agent to preserve the vehicle. Prior to the destruction of the vehicle, the Assistant United States Attorney did not ask the case agent to preserve the vehicle in this case.

In late July, 2013, Defense Counsel requested that the Government arrange a viewing of the vehicle and the case agent for the Government discovered that the

---

[2] Judgment of Dismissal of the Information was entered in 12CR4039 on November 30, 2012.

vehicle had been sold for parts.

## RULING OF THE COURT

1) <u>Defendant's motion to dismiss the indictment</u>  (ECF No. 30)

Defendant moves the Court to dismiss the indictment on the grounds that 21 U.S.C. §841 is unconstitutional.  Defendant asserts that the statute removes from the jury the assessment of facts that increase the prescribed range of penalties because the type and quantity of the controlled substance is a sentencing factor and not an element of the crime.  Defendant further asserts that the indictment should be dismissed because the grand jury was not asked to find that Defendant knew the quantity of the methamphetamine involved in the offense.

In *United States v. Hernandez,* 322 F.3d 592, 602 (9th Cir. 2003)*,* the Court of Appeals rejected the claim that *Apprendi* rendered the federal drug laws unconstitutional.  In *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002), the Court of Appeals stated that "*Apprendi* [does] not change the long established rule that the government need not prove that the defendant knew the type and amount of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed some controlled substance." *See also, United States v. Mendoza-Paz*, 286 F.3d 1104, 1110 (9th Cir. 2002) (finding that the jury does not need to find that the Defendant knew the weight and type of drugs).

Defendant's motion to dismiss (ECF No. 30) is denied.

2) <u>Defendant's motion to dismiss indictment and request for discovery</u> (ECF No. 38).

Defendant moves the Court to dismiss the indictment due to the destruction of exculpatory evidence. Defendant asserts that the Court should dismiss the indictment with prejudice on the grounds that the Government committed a reckless discovery violation.  In the alternative, Defendant contends that balancing the quality of the government conduct and the exculpatory value of the evidence supports dismissal of the indictment on the grounds of a due process violation.  Defendant asserts that the prosecutor failed to take affirmative steps to preserve the vehicle despite the filing of

his motion to preserve evidence and his intention to proceed to trial. Defendant asserts that he is prejudiced by the loss of the opportunity to assess the appearance of the vehicle at the time that the agent in the primary lane decided to detain him.[3] In addition, Defendant moves the Court for "discovery regarding the government's destruction of evidence, which occurred despite defense requests for preservation and/or Court orders requiring preservation." (ECF No. 43 at 1).

The Government asserts that the inadvertent destruction of the vehicle has not deprived the Defendant of any exculpatory evidence. The Government contends that the Defendant's knowledge that the drugs were in the vehicle is not in dispute in this case, given the Defendant's statement at the time of his arrest. The Government asserts that the destruction of the vehicle did not affect the Defendant's ability to mount a defense in this case, given the photos taken at the time of the search and the lack of prejudice to the defense.

In *United States v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013), the Court of Appeals for the Ninth Circuit stated:

> In order for destruction of evidence to rise to the level of a constitutional violation, a party must make two showings. First, that the government acted in bad faith, the presence or absence of which "turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed." *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir.1993) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56–57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). Second, that the missing evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Cooper*, 983 F.2d at 931. Another configuration of this test requires the showing of bad faith where the evidence is only potentially useful and not materially exculpatory. *Del Toro–Barboza*, 673 F.3d at 1149. For evidence to be materially exculpatory, its exculpatory nature must be apparent. *Id*.

---

[3]Defense counsel argued: "with respect to prejudice, the evidence is that the – with respect to the primary agent's decision to arrest or detain and handcuff Mr. Alvarado was the appearance of the car. That ultimately is going to be substantial evidence at trial, that we assume. ... And so to the extent the Government is going to rely on that critical evidence to establish one element of the crime, then we've lost some opportunity to assess it, and – because notwithstanding our request for preservation, the evidence was destroyed." (ECF No. 50 at 95).

> Under either configuration of the test, the inquiry turns on whether any exculpatory value in the [vehicle] was apparent to the government agents.

*Sivilla*, 714 F.3d at 1172. Generally, evidence is material and exculpatory if it is clearly favorable to the accused, and considered in the context of the entire record, may affect the outcome of the case. *See United States v. Agurs*, 427 U.S. 97, 113-114 (1976). "Potentially useful evidence" is evidence that "could have been subjected to tests, the results of which might have exonerated the defendant," such as Breathalyzer samples or seized cocaine. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004); *Youngblood*, 488 U.S. at 57.

In this case, the Court held a hearing in order to fully establish and examine the relevant facts. On September 7, 2012, Defendant attempted to cross the border from Mexico in a grey Jeep Cherokee. The inspector in the primary lane inspected the backseat of the vehicle and referred the vehicle to secondary inspection. A narcotics dog alerted to the backseat. A search at secondary lead to the discovery of fourteen packages that were hidden and removed from inside the backrest of the back seats. The packages tested positive for methamphetamine. Defendant was arrested and the vehicle was seized. At secondary inspection, the border patrol agent photographed the back seat area prior to the search. The agent discovered black packages hidden in the backrests. The agent slit the backrests with a knife and removed fourteen packages wrapped in black plastic. The agent took photographs of the vehicle before and after the search and the removal of the packages.

At the time of his arrest, Defendant made a statement admitting that he knew that methamphetamine was concealed in his vehicle. The case against the Defendant proceeded with an Information under the expectation that it would be resolved by a plea agreement and a plea of guilty. On October 1, 2012, Defendant and his counsel signed a Plea Agreement. The factual basis for the Plea Agreement signed by the Defendant stated in part: "The following facts are true and undisputed: ... that at the time defendant drove the vehicle into the United States through the San Ysidro, POE, he knew that the vehicle contained approximately 22.60 kilograms (49.72 pounds) of Methamphetamine,

1  or some other prohibited drug and he intentionally brought these drugs into the United
2  States." (Govt. Ex. 15 at 3). Appearances were scheduled before the Magistrate Judge
3  for a change of plea. Defendant requested more time and new counsel.

4       On November 20, 2012, the case was indicted and this case was opened.

5       On November 27, 2012, Defense Counsel informed the Magistrate Judge that the
6  plea in the Information case would not go forward and the Magistrate Judge vacated the
7  change of plea hearing on the court calendar for that day. On the same day, counsel for
8  the Defendant filed a motion to compel and to preserve evidence in this case. The
9  information case was dismissed a few days later, and this case proceeded on the
10 Indictment.

11      On December 3, 2013, Defendant and his counsel appeared at a hearing before
12 this Court. The Court inquired into any discovery issues that needed the Court's
13 attention. No matters were brought to the Court's attention and no order to preserve
14 was entered.[4]

15      On December 5, 2012, eight days after the Defense Counsel notified the Court
16 that the scheduled change of plea would not go forward, the vehicle was destroyed in
17 accordance with the policy of the Customs and Border Patrol to hold the vehicle for 60
18 days after an arrest and then to move forward with disposition.

19      Counsel for the Government did not notify the case agent to preserve the vehicle,
20 despite his obligation to preserve evidence. The conduct of Government Counsel was
21 inadvertent and, in its worst light, negligent.[5] The Court must determine whether

---

23     [4]Defense counsel's failure to request a preservation order did not alter the Government's obligation to preserve evidence.

25     [5]Under the facts of this case, the Court will not grant the Defendant's request for an order the Government "to identify all the cases in which it improperly destroyed evidence." (ECF No. 43 at 3). Defendant seeks to show a pattern of conduct and relies upon a prior case concerning instances in which evidence has been destroyed after entry of a preservation order by [the] court." (ECF No. 43-1 at 5). The Court concludes that the discovery requested is overbroad, lacks reasonable specificity, and does not request information material to the presentation of a defense. This case involves specific facts which cannot be compared to "all cases in which [the Government] improperly destroyed evidence." (ECF No. 43 at 3).

"whether any exculpatory value in the [vehicle] was apparent to the government agents." *Sivilla*, 714 F.3d at 1172.

In this case, the prosecutor knew that detailed photographs had been taken of the interior of the vehicle after the vehicle was referred to secondary and before the border patrol agents used a knife to slice open the seats and remove the fourteen packages from the backseat rests of the backseats. The photos taken prior to the search clearly show the state of the backseat prior to the removal of the packages. The prosecutor would reasonably believe that the appearance of the vehicle at the time of the arrest at the primary lane was preserved by the photographs. Assuming that evidence of the appearance of the interior of the vehicle to the primary inspector would be relevant to some issue at trial, the interior of the vehicle was materially altered at the time of the search at secondary. At the time the vehicle was destroyed, the back rests in the back seat had been slit open with a knife and fourteen packages had been removed. The only evidence of the appearance of the backseat of the vehicle at the primary lane was the photographs taken prior to the search and the testimony of the agents.

The prosecutor in this case knew that the Defendant had made a statement at his arrest admitting to knowledge of the drugs in the vehicle, and knew that the Defendant had signed a plea agreement swearing under penalty of perjury that he knew there were drugs in the vehicle. Under the facts of this case, the Court concludes that it was not apparent to the prosecutor that the Defendant would be seeking to present evidence at trial to rebut his knowledge that drugs were hidden in the vehicle[6] and it was not apparent to the prosecutor that the vehicle contained evidence relevant to rebut Defendant's knowledge that the vehicle contained drugs. Even if the vehicle had been preserved, Defendant has not shown the manner in which the vehicle at the time of its

---

[6] At a hearing on February 19, 2013, Defense Counsel informed the Court that he was seeking discovery to support "essentially ...duress defense." This hearing was after the destruction of the vehicle and has relevance only as to the Government's knowledge of the exculpatory value of the vehicle and not to the Government's obligation to preserve evidence.

destruction would have exculpatory value at trial.

The Court finds that there are no facts to support a claim that the exculpatory value of the vehicle at the time of its destruction was apparent to government agents or that the conduct of the government agents demonstrated bad faith. The Court concludes that the destruction of the vehicle did not violate Defendant's due process rights. *See Sivilla*, 714 F.3d at 1172; *see also, United States v. DelToro-Barboza*, 673 F.3d 1136, 1150 (9th Cir. 2012) ("[W]here evidence is routinely destroyed or lost by the government with no knowledge that the evidence is likely exculpatory, and the evidence is later sought for testing, the destruction or loss of such evidence is not fundamentally unfair to a defendant and will not offend traditional notions of due process."). Defendant's motion to dismiss the indictment is denied.

In the alternative, Defendant asks that the Court "give an adverse jury instruction." (ECF No. 38-1 at 2). In determining whether to give a remedial jury instruction, the "[c]ourt must balance 'the quality of the Government's conduct' against the degree of prejudice to the accused,' where the government bears the burden of justifying its conduct and the accused of demonstrating prejudice." *Sivilla*, 714 F.3d at 1173 (quoting *United States v. Loudhawk,* 628 F.2d 1139, 1152 (9th Cir. 1979) (Kennedy, J., concurring)).

> In evaluating the quality of the government's conduct, the court should inquire whether the evidence was lost or destroyed while in its custody, whether the Government acted in disregard for the interests of the accused, whether it was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions, and, if the acts were deliberate, whether they were taken in good faith or with reasonable justification.... It is relevant also to inquire whether the government attorneys prosecuting the case have participated in the events leading to loss or destruction of the evidence, for prosecutorial action may bear upon existence of a motive to harm the accused.
>
> ...
>
> In analyzing prejudice, the court must consider a wide number of factors including, without limitation, the centrality of the evidence to the case and its importance in establishing the elements of the crime or the motive or intent of the defendant; the probative value and reliability of the secondary or substitute evidence; the nature and probable weight of factual inferences or other demonstrations and kinds of proof allegedly lost to the accused; the probable effect on the jury from absence of the evidence, including dangers of unfounded speculation and bias that might result to the defendant if adequate presentation of the case requires explanation about

the missing evidence.

*Sivilla,* 714 F.3d at 1173-74 (quoting *Loud Hawk* 628 F.2d at 1152).

In this case, the evidence was destroyed while in the government's custody. The prosecutor had an obligation to preserve evidence and failed to take affirmative action to preserve the vehicle. The Government's conduct was negligent, though the opportunity to preserve the vehicle was reasonably influenced by the anticipated plea of guilty to the Information. The Court will evaluate any claim of prejudice at trial balanced against the conduct of the Government, based upon the facts and law, in determining whether any proposed jury instruction will be given to the jury.

## CONCLUSION

IT IS HEREBY ORDERED 1) Defendant's motion to dismiss the indictment (ECF No. 29-2) is denied and 2) Defendant's motion to dismiss the indictment and request for discovery is denied. (ECF No. 38-1 and 38-4).

DATED: September 11, 2013

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge